IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

ID TECH LLC d/b/a FROST NYC
and NISON KAYKOV,

                Plaintiffs,

    -against-

TOGGLE WEB MEDIA LLC d/b/a ICY AF
JEWELRY and MOSHE PRIYEV,

      Defendants.

Case No. 1:20-CV-05949 (EK)

ECF CASE

**Without Oral Argument**

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS

Craig K. Tyson
The Law Office of Craig K. Tyson
299 Broadway, Suite 800
New York, New York 10007
Phone: (917) 815-8530
Fax: (212) 661-5844
ctfstop@aol.com

**Attorney for Defendants**
**Toggle Web Media LLC d/b/a Icy AF Jewelry**
**and Moshe Priyev**

July 16, 2021

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS...................................................................................................2

ARGUMENT.....................................................................................................................4

    I.   This court should abstain and dismiss the complaint pursuant to the Colorado River doctrine since there is an ongoing New York State Court action involving the same Parties, same factual allegations and similar causes of action....................................................................5

    a)   The Queens Action and the Instant Federal Action are Parallel Suits ..............................5

    b)   The Six Factor Test Under *Colorado River* Provide Exceptional Circumstances for Dismissal of Plaintiffs' Claims in Federal Court ........................................................7

        *i.*   Factor 1 - Assumption of Jurisdiction Over a *Res* ........................................8

        ii.   Factor 2 - Inconvenience of the Forum.............................................................8

        iii.   Factor 3- Avoidance of Piecemeal Litigation ..............................................8

        iv.   Factor 4 - The Order in Which the Actions Were Filed............................................11

        v.   Factor 5 - Whether State or Federal Law Applies.............................................12

        vi.   Factor 6- Protection of the Federal Plaintiff's Rights.............................................12

        vii.   Additional Factor- Vexatious or Reactive Litigation...............................................12

CONCLUSION.......................................................................................................17

i

## TABLE OF AUTHORITIES

**Cases**

*Alliance of American Insurers v. Cuomo,* 854 F.2d 591, 602 (2d Cir.1988)....................................5

*Arkwright-Baston Mfrs. v. City of New York,* 762 F.2d 205,211 (2d Cir.1985)...........................9

*Bernstein v. Hosiery Mfg. Corp. of Morganton, Inc.,* 850 F.Supp 176, 182 (E.D.N.Y. 1994) .......5

*Bernstein v. Hosiery Mfg. Corp. of Morganton, Inc.,* 850 F.Supp 176, 184 (E.D.N.Y. 1994) .......5

*Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.,* 600 F.2d 1228, 1229 n. 1 (7th
    Cir.1979) ..............................................................................................................................5

*Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.CT 1236,47
    L.Ed.2d 482 (1976) ..............................................................................................................5

*De Cisneros v. Younger,* 871 F.2d 305,307 (2d Cir.1989) ...........................................................5

*DeCisneros v. Younger,* 871 F.2d 305 (2d. Cir. 1989) ..................................................................8

*FDIC v. Four Star Holding Co.,* 178 F.3d 97 (2d Cir. 1999).........................................................7

*General Reinsurance Corp. v. CIBA-GEIGY Corp.,* 853 F.2d 78, 81 (2d Cir.1988)......................8

*Goldentree Asset Management, L.P. v. Longaberger Company,* 448 F.Supp.2d 589, 593
    (S.D.N.Y. 2006) ...................................................................................................................7

*Goldentree Asset Management, L.P. v. Longaberger Company,* 448 F.Supp.2d 589, 594
    (S.D.N.Y. 2006) ...................................................................................................................8

*Lumbermens Mut. Casualty Co. v. Connecticut Bank & Trust Co.,* 806 F.2d 411, 414 (2d
    Cir.1986) ..............................................................................................................................8

*Moses H Cone Mem'l Hasp. v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927 (1983) ..8

*Moses H Cone Memorial Hospital v. Mercury Construction Corp..,* 460 U.S. 1, 21 (1983)..........5

*Telesco v. Telesco Fuel and Masons' Materials, Inc.,* 765 F.2d 356, 362 (2d. Cir. 1985)..............5

*Telesco v. Telesco Fuel and Masons' Materials, Inc.,* 765 F.2d 356, 363 (2d. Cir. 1985)..............7

Defendants Toggle Web Media LLC d/b/a Icy Af Jewelry and Moshe Priyev (sometimes referred to herein as "Toggle" or "Defendants") respectfully submit this Memorandum of Law pursuant to the *Colorado River* doctrine and in support of their Motion to dismiss the Complaint of Plaintiffs ID Tech LLC d/b/a Frost NYC and Nison Kaykov (collectively referred to herein as "Plaintiffs") on the grounds, *inter alia,* that there is a parallel action pending in New York State Supreme Court, Queens County.

## PRELIMINARY STATEMENT

The unique circumstances of this case warrant abstention and dismissal under the *Colorado River* doctrine. Plaintiffs have been actively litigating the same claims in Queens County since April 2019. Plaintiffs started the Queens County Action; however, after a February 28, 2020 Order in the Queens Supreme Court case following multiple motions, Plaintiffs filed this present federal action and have still not complied with this Queens Supreme Court Order. Plaintiffs commenced the instant Federal action seeking the same relief as was being requested in Queens County. It is the clear policy of this Court to avoid piecemeal litigation and to abstain from accepting cases being litigated in State Court. Moreover, the Court will abstain to prevent vexatious and reactive litigation.

Plaintiffs' institution of the instant suit was purely tactical and with venal purpose. The objectives were (a) forum shopping to secure a new judge who may be more favorable to them, (b) engaging in piecemeal litigation in the hope of gaining an advantage by litigating the same claims being litigated in Queens County, (c) misleading the Court by not giving full information about the State court action (d) increasing Defendants' legal expenses and compelling them to litigate the same issues in two forums.

## STATEMENT OF FACTS

On April 23, 2019 Plaintiffs filed a complaint against Toggle Web Media LLC d/b/a Icy Af Jewelry and Moshe Priyev in the Supreme Court of the State of New York, County of Queens, asserting causes of action for False Designation of Origin in Violation of 15 U.S.C. §1125(a), Trade Dress Infringement in Violation of 15 U.S.C. §1125(a), Injury to Business Reputation, Common Law Trade Infringement and Unfair Competition, and To Pierce the LLC Veil. The Queens State action is pending. See Exhibit A at 1-14.

Defendants filed a verified answer and counterclaims to Plaintiffs' New York Supreme Court complaint in June, 2019. See Exhibit B at 1-2.

Parties have been actively litigating their claims and defenses in Queens County since April 2019. For more than two (2) years, the Parties have exchanged extensive discovery. Specifically, Defendants provided over 800 documents in response to Plaintiffs' interrogatories and discovery requests in the State case.

Plaintiff ID Tech LLC's managing member Arthur Ilyayev was deposed in the state case on September 16, 2019 with Defendant Moshe Priyev present. See Exhibit C at 1-2. Plaintiffs served three non-party witnesses subpoenas before December, 2019 in the Queens County action. See Exhibit D at 1-7.

Plaintiffs subpoenaed non-party witness Shopify Inc. and obtained the financial business records of defendants' website sales from Shopify Inc. on December, 2019, which were $0.00. Id. at 8. Defendants advised Plaintiffs as early as September, 2019 in their first discovery production that defendants' website sales were $0.00.

2

In November 2019, Plaintiffs filed their second Digital Millennium Copyright Act (DMCA) takedown notice pursuant to 17 U.S.C. § 512 on Defendants. Plaintiffs further notified Shopify Inc. that they filed the State action against Defendants. See Exhibit E at 5.

Non-party Shopify Inc. relied upon Plaintiffs' DMCA Takedown Notice and their notice of the filed State action under 17 U.S.C. § 512(g)(2)(c), by removing 37 product pages of chain link necklaces and bracelets from Defendants' website. See id. at 8.

As of this day, Defendants do not have the ability to display the 37 product pages on their website until the State Action commenced by Plaintiffs is resolved pursuant to 17 U.S.C. § 512(g)(2)(c). The State Court did not order an injunction on defendants' website, as plaintiffs acted in their sole discretion. A resolution of the State Court action or interim Court Order is not legally necessary for Shopify to be legally required to remove the 37 pages from defendants' website as long as the State Court action or this Federal action is pending.

The New York Supreme Court ordered on February 25, 2020 that Plaintiffs produce document discovery by March 31, 2020. See Exhibit F at 1-3. Governor Andrew Cuomo's Executive Orders stayed all legal deadlines in New York state courts until November 3, 2020 due to the covid-19 pandemic.

In the state case, Plaintiffs have changed counsel twice. All counsels were notified multiple times of the recent State court order while representing plaintiffs.

A stipulation was signed between the Parties in the NY Supreme Court case on December 10, 2020, allowing Plaintiffs an extension of time to produce discovery that it owes, in which Plaintiffs have still not complied despite multiple promises to do so. See Exhibit G at 1.

As of this day, Plaintiffs have not complied with the NY Supreme Court order from February 25, 2020. Defendants requested Plaintiffs on multiple occasions, spanning over a year, to produce the discovery that they owe, which they have still not done. See Exhibit H.

On December 7, 2020 Plaintiffs filed the present Federal action against the same Defendants, asserting causes of action for Unfair Competition and Copyright Infringement under 17 U.S.C. §§ 106, et seq. See Complaint (Dkt. No. 1).

The Federal action is based on identical facts as the State complaint. The State complaint and Federal complaint are almost the same verbatim. Compare Exhibit A ¶ 1-5, 8-14, 16-17, 23-31, 61-68 with Complaint ¶ 1-5, 8-14, 18-19, 22-29, 30-38.

On March 29, 2021, this Court ordered Plaintiffs to show cause why they did not pursue their Federal action upon defendants after almost four months of inaction after filing the Federal complaint. See Order (Dkt. No. 9) at 2.

Plaintiffs submitted a motion letter to this Federal Court "requesting an order to serve by publication" Plaintiffs' Motion (Dkt. No. 10) at 2, but omitted the fact that a State Action was pending with the same Parties on the same factual allegations.

In this Federal Court's most recent Order denying Plaintiffs' motion for leave to effect alternate service, Magistrate Judge Roanne L. Mann acknowledged "Counsel for defendants in a parallel state court action have filed a response to plaintiffs' motion, apprising the Court of material facts omitted from plaintiffs' submission." id. at 1, and "Plaintiffs' claim that they "hav[e] no leads or information with which they can pursue [d]efendants in New York[,]" Pl. Motion at 2, strains credulity given the fact that the Parties to this action have been engaged in parallel state court litigation since 2019." Id. at 4.

**ARGUMENT**

I.   **This court should abstain and dismiss the complaint pursuant to the Colorado River doctrine since there is an ongoing New York State Court action involving the same Parties, same factual allegations and similar causes of action.**

In April, 2019 Plaintiffs initiated the Queens County action which involves the same factual allegations and similar causes of action as the instant Federal Action. For more than two years, Plaintiffs have engaged in the state court action. After a February 28, 2020 Court Order in the Queens Action following multiple motions, Plaintiffs did not comply with State Court Order and filed the present Federal Action. In order to avoid inconsistent rulings by State and Federal Courts, avoid piecemeal litigation, and promote the interests of judicial economy, Plaintiffs' Federal Action should be dismissed pursuant to the *Colorado River* doctrine.

In *Colorado River Water Conservation District* v. *United States,* 424 U.S. 800, 96 S.Ct 1236, 47 L.Ed.2d 482 (1976), the Supreme Court stated, "in the interests of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" *(id.* at 817) a Federal District Court may decline to exercise its jurisdiction over a particular matter.

The Courts have held that dismissal under *Colorado River* "is prudential, and is left to the Court's discretion." *Bernstein v. Hosiery Mfg. Corp. of Morganton, Inc.,* 850 F.Supp 176, 182 (E.D.N.Y. 1994), *citing De Cisneros v. Younger,* 871 F.2d 305, 307 (2d Cir.1989) and *Alliance of American Insurers v. Cuomo,* 854 F.2d 591, 602 (2d Cir. 1988). The "test is not subject to precise rules, but rather should 'be applied in a pragmatic, flexible manner with a view to the realities of the case at hand.'" *Telesco v. Telesco Fuel and Masons' Materials, Inc.,* 765 F.2d 356, 362 (2d. Cir. 1985), *quoting Moses H Cone Memorial Hospital v. Mercury Const. Corp.,* 460 U.S. 1, 21 (1983).

**a)  The Queens Action and the Instant Federal Action are Parallel Suits**

5

The instant Federal Action and the Queens Action meet Colorado River's initial standard necessary for dismissal as the two suits are parallel. The Courts have routinely ruled that "[a] suit is 'parallel' when substantially the same Parties are contemporaneously litigating substantially the same issues in another forum." *Bernstein v. Hosiery Mfg. Corp. of Morganton, Inc.,* 850 F.Supp 176, 184 (E.D.N.Y. 1994), *quoting Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.,* 600 F.2d 1228, 1229 n. 1 (7th Cir.1979).

In *Bernstein v. Hosiery Mfg. Corp. of Morganton, Inc., 850 F.Supp 176, 184 (E.D.N.Y. 1994),* the Court stated:

> The fact that precisely the same claims are not made in the two proceedings, or that alternative forms of relief are sought in the two actions does not mean the actions are not duplicative or parallel. What matters is that the claims concern the same events, *Telesco,* supra, 765 F.2d at 362, and involve "sufficient overlap of subject matter," *Alliance of American Insurers,* 854 F.2d at 603. Indeed, even if the claims asserted in the two proceedings are not identical, if the state proceeding would permit adjudication of the claims asserted in the federal proceeding, the proceedings are parallel. *Telesco,* 765 F.2d at 362. *Accord Brillhart* v. *Excess Ins. Co.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 1175 (1942) (if the claims raised in the federal proceeding "could be satisfactorily adjudicated in [the state] proceeding," abstention may be warranted).

(emphasis added).

There can be no doubt that Plaintiffs' claims in the instant Federal Action are parallel to the causes of action in the Queens Action. One needs merely to review the Parties' pleadings in both the State Action and Federal Action to see that these two actions and the two complaints are virtually identical and arise out of the same set of facts. This Court, in the most recent Order, acknowledged the "parallel state court action" Order at 1, and "that the Parties to this action have been in engaged in parallel state court litigation since 2019." See id. at 4.

6

Moreover, the State Action will permit adjudication of all of the claims asserted in the Federal Action. Plaintiffs have not amended or supplemented their original State complaint in Queens County.

There are multiple factual overlaps between Plaintiffs' State Action and Federal Action as the two suits are virtually identical and arise out of the same set of facts. The Court is respectfully referred to compare the Federal and the State complaints. Compare Exhibit A ¶ 1-5, 8-14, 16-17, 23-31, 61-68 with Complaint ¶ 1-5, 8-14, 18-19, 22-29, 30-38.

### b) The Six Factor Test Under *Colorado River* Provide Exceptional Circumstances for Dismissal of Plaintiffs' Claims in Federal Court

Where two competing suits are parallel, the Court must weigh several factors to determine whether dismissal under *Colorado River* is appropriate. The six (6) factors to be examined in determining whether abstention is appropriate were articulated by the Second Circuit in *FDIC v. Four Star Holding Co.*, 178 F.3d 97 (2d Cir. 1999):

> The test for determining whether abstention is appropriate, first articulated in *Colorado River,* now requires examination of six factors: "(1) assumption of jurisdiction over a *res;* (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision and (6) protection of the federal plaintiffs rights." *De Cisneros v. Younger,* 871 F.2d 305, 307 (2d Cir.1989).

In *Goldentree Asset Management, L.P. v. Longaberger Company,* 448 F.Supp.2d 589, 593 (S.D.N.Y. 2006), the Court noted that "[n]o single factor is determinative, and the weight to be given to any one factor may vary greatly from case to case" (internal quotation marks and citations omitted).

Further, the Supreme Court has noted that an additional factor - vexatious or reactive litigation- can provide exceptional circumstances warranting abstention and dismissal under *Colorado River. See, e.g., Telesco v. Telesco Fuel and Masons' Materials, Inc.,* 765 F.2d 356,

363 (2d. Cir. 1985). In weighing the *Colorado River* factors in the instant action, it is clear that the Federal Action should be dismissed.

### i. Factor 1 - Assumption of Jurisdiction Over a *Res*

With respect to jurisdiction over a *res* or property interest, the "property" in the State Action and Federal Action is all located in New York. Therefore, this factor is not an issue.

### ii. Factor 2 - Inconvenience of the Forum

Having commenced litigation in Queens County and litigated there for two years, Plaintiffs would be hard pressed to claim that Queens is an improper forum. Moreover, the state court has jurisdiction over causes of action for unfair competition and copyright infringement.

### iii. Factor 3- Avoidance of Piecemeal Litigation

This Court observed in *Goldentree Asset Management, L.P. v. Longaberger Company,* 448 F.Supp.2d 589, 594 (S.D.N.Y. 2006), "the Second Circuit noted in *Arkwright-Baston,* that maintaining virtually identical suits arising out of the same set of facts in two forums would waste judicial resources and invite duplicative effort. Avoidance of piecemeal litigation is best served by leaving these suits in state court."

Significantly, the Court in *Goldentree* noted that "the most important factor in our decision to approve dismissal in Colorado River was the clear federal policy of avoidance of piecemeal litigation." Id. at 594, citing *Moses H Cone Mem'l Hasp. v. Mercury Construction Corp.,* 460 U.S. I, 103 S.Ct. 927 (1983) (emphasis added) (internal quotations omitted).

In *DeCisneros v. Younger*, 871 F.2d 305 (2d. Cir. 1989), the Second Circuit held:

> The basis of the district court's decision to abstain is the third factor-avoidance of piecemeal litigation. Because the state and federal issues are "inextricably linked," the risk of such adjudication is real in this case and the district court properly abstained from allowing litigation to proceed in installments. *See General Reinsurance Corp. v. CIBA-GEIGY Corp.,* 853 F.2d 78, 81 (2d Cir.1988).

The central problem with piecemeal adjudication in this case, as the district court noted, is that a potential exists for "inconsistent and mutually contradictory determinations." Specifically, Judge Mukasey feared a scenario under which Cisneros would prove Overall's liability in federal court-and then be able to use the judgment preclusively in state court-but that the inverse would not be true. That is, if Overall were relieved of liability in the federal action, state plaintiffs-such as Cisneros' neighboring apartment dwellers-would not be bound by federal judgment because they would not have been parties to it. Thus, Overall could face liability in two forums with the risk of inconsistent results, and the same state plaintiffs would be unable to be joined in the pending federal action because their presence would defeat diversity jurisdiction. The district court therefore concluded, and we agree, that these potentially contradictory findings of liability would "cause friction between state and federal courts." *See Lumbermens Mut. Casualty Co. v. Connecticut Bank & Trust Co.,* 806 F.2d 411, 414 (2d Cir.1986).

In the opposite scenario, where the state courts decide the negligence issues first, there is no such conflict. The state proceedings are more comprehensive than the federal proceedings. Further, as Cisneros is a party to the state proceedings, and will have a full opportunity to litigate liability and damages, the state judgment could be given preclusive effect in the federal action. Moreover, the district court's stay of its jurisdiction lends support to the value of judicial economy that animates *Colorado River.* Thus "reasons of wise judicial administration," *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246-47, favor abstention in this case in order to avoid duplicative simultaneous litigation. *See Arkwright-Baston Mfrs. v. City of New York,* 762 F.2d 205,211 (2d Cir.1985).

*DeCisneros v. Younger, Id.* at 307-08 (emphasis added).

Similar to *DeCisneros,* the Queens Action (rather than the instant Federal Action) is the more comprehensive action, which covers all facts alleged in the Federal Action. The Queens action has five causes of action (Exhibit A), while the Federal Action has two causes of action. See Complaint (Dkt. # 1). If the Federal Action were to proceed first, as Plaintiffs wish, Defendants would be faced with the possibility of liability in two forums with the risk of inconsistent results. As was true in *DeCisneros,* if the more comprehensive Queens Action is litigated first, the state judgment will be given preclusive effect in the instant Federal Action. As was true in *DeCisneros,* if the Federal Action is decided prior to the Queens Action, the risk of

and mutually contradictory determinations is high; but this risk is eliminated if the Queens Action is heard first.

Additionally, in the Queens Action, Plaintiffs have a full opportunity to litigate liability and damages. Counsel in Queens County represents plaintiffs. Further, Plaintiffs seek the same relief from Defendants in the Queens Action as they do in the Federal Action. Compare Exhibit A ¶ 55-58 with Complaint ¶ 36-38. Even if Plaintiffs claim that their pleadings are different in state and federal court, there is no doubt that the state and federal actions are inextricably linked, and concern the same facts and websites.

In *Telesco v. Telesco Fuel and Masons' Materials, Inc.,* 765 F.2d 356, 362- 63 (2d. Cir. 1985), the Second Circuit upheld a dismissal in Federal Court under the *Colorado River* doctrine, since the state claims and federal claims were the same, despite the pleadings containing an alternative theory of recovery. The Second Circuit stated:

> In applying these factors to the circumstances of this case we hold that on balance there were sufficient grounds for the dismissal of the existing federal action. To begin with, the federal and state actions are essentially the same. Appellant contends that he has raised a new legal theory set forth in the federal complaint, i.e., the existence of a de facto partnership governing the parties' relationships. He further asserts that this new legal theory together with his affirmative claim for reinstatement as a director, officer and employee, constitute a new cause of action not raised in the state courts and consequently that these distinctions between the federal and state actions entitle him to remain in the federal court. The fact, however, remains that in its essential elements the same cause of action, regardless of theory or pleadings, is asserted in both courts. Thus, the federal action does in fact duplicate the state litigation, as appears from the following: (a) Angelo's federal complaint, based on the alleged partnership, concerns the same events and seeks the same relief requested in the original state court action, and there is no reason to believe Angelo cannot raise this theory in the pending original action. Merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit. *See Olmstead v. Amoco Oil Co.,* 725 F.2d 627, 631-32 (11th Cir.1984); *Berlitz Schools of Languages of America, Inc. v. Everest House,* 619 F.2d 211, 215 (2d Cir.1980); *Roach v. Teamsters Local Union No.* 688, 595 F.2d 446 (8th Cir.1979). *But see Crawley v. Hamilton County Commissioners,* 744 F.2d 28, 31

> (6th Cir.1984) (state court proceedings not "parallel proceedings"); (b) with respect to his claim for reinstatement raised in the federal complaint, the district court correctly found that this issue could properly be raised in the state court under the pleadings of the original action and that the merits of this claim were before the state court in the injunction action. In other words, the federal case is an action, involving a novel legal theory, parallel to the pending state cases.

(emphasis added).

It is clear that this most important factor weighs heavily in favor of this Court abstaining and dismissing the Federal Action to avoid piecemeal litigation.

### iv.   Factor 4 - The Order in Which the Actions Were Filed

With respect to the fourth factor, the order in which jurisdiction was obtained, the State Action was filed by Plaintiffs over two years ago on April 23, 2019. The instant Federal Action was filed on December 7, 2020.

For more than two years, the Parties have been involved in considerable discovery and motion practice in the State Action. Three non-party witnesses were served with subpoenas (Exhibit D at 1-7), certified business records were obtained from non-party witness Shopify Inc. (id. at 8), and Plaintiff ID Tech LLC's managing member was deposed (Exhibit C). Following multiple filed discovery motions in Queens County, a State Court Order was entered on February 25, 2020. See Exhibit F.

In *Bernstein v. Hosiery Mfg. Corp. of Morganton, Inc.*, 850 F.Supp 176, 185 (E.D.N.Y. 1994), the Court stated:

> A determination under this factor "does not rest with a race to the courthouse." Instead, "this factor is considered in a common-sense manner by examining how much progress has been made in each forum." *Arkwright-Baston, supra,* 762 F.2d at 211. The Court notes that the state court proceedings have been underway for quite some time, and have involved considerable discovery and motion practice. The federal proceeding on the other hand, has just been initiated. Further, the Court finds that there are no justifiable reasons for the parties to duplicate their efforts in the state courts before this court. *Accord De Cisneros, supra,* 871 F .2d at 308.

11

As was true in *Bernstein,* a common-sense assessment of how much progress has been made in each forum in the cases at bar leads to abstention and dismissal of the instant Federal Action since so much progress has been made in the state action and the Federal action just began.

### v.   Factor 5 - Whether State or Federal Law Applies

Plaintiffs can amend or supplement their State complaint to add all relevant Federal or State statutes and common law claims covering unfair competition and copyright infringement. Furthermore, Plaintiffs have available legal remedies in the state court action. As of this day, Defendants do not have the ability of display 37 product pages on their website of which Plaintiffs complained in their second DMCA Takedown Notice on November 11, 2019 (Exhibit D at 5), until the State Action is resolved pursuant to 17 U.S.C. § 512(g)(2)(c). Id. at 8.

### vi.   Factor 6- Protection of the Federal Plaintiff's Rights

As for the sixth factor, protection of the federal Plaintiff's rights, the State Action was commenced by Plaintiffs in New York State Supreme Court, Queens County. Plaintiffs chose to initiate their complaint in Queens County, clearly believing Queens County to be an appropriate forum for resolution of this dispute with Defendants. Accordingly, it was Plaintiffs' choice to litigate claims in the State court for two years; therefore Plaintiffs cannot state that their own decision is against their rights. The State Action is pending, and Plaintiffs have not amended or supplemented their State complaint.

### vii.   Additional Factor- Vexatious or Reactive Litigation

In weighing the factors under the *Colorado River* doctrine, the Courts have stated that vexatious and reactive litigation provides exceptional circumstances warranting abstention and

dismissal. There is no better example for vexatious and reactive litigation that the instant Federal

Action.

In *Telesco v. Telesco Fuel and Masons' Materials, Inc.,* 765 F.2d 356, 363 (2d. Cir.

1985), the Second Circuit stated:

> In *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.,* 460 US 1 (1983),
> the Supreme Court stated that it found "considerable merit" in the idea "that the
> vexatious or reactive nature of either the federal or the state litigation may
> influence the decision whether to defer to a parallel state litigation under
> *Colorado River."* 460 U.S. at 17 n. 20, 103 S.Ct. at 938 n. 20. The sequence of
> events in this case shows that the same party is plaintiff in both courts and sues in
> the federal court on the same cause of action after he has suffered some failures in
> the earlier state court action. This fact and the hostile history of the case strongly
> indicate the vexatious nature of the litigation. Accordingly, the conservation of
> judicial resources is a factor to be considered in determining the existence of
> exceptional circumstances justifying deference to a parallel state litigation.

(emphasis added).

In *Bernstein v. Hosiery Mfg. Corp. of Morganton, Inc.,* 850 F.Supp 176, 184 (E.D.N.Y.

1994), the Court stated:

> Finally, the Court notes that in *Moses A. Cone Hospital,* the Supreme Court found
> considerable merit in the idea that "the vexatious or reactive nature of either the
> federal or the state litigation may influence the decision" whether to abstain under
> *Colorado River. Moses A. Cone Hospital,* 460 U.S. at 18-19 n. 20, 103 S.Ct. at
> 938 n. 20. Indeed, the very case *Colorado River* was based on, *Accord Brillhart* v.
> *Excess Ins. Co.,* 316 US 491 (1942), *supra,* made the same observation:
> "Ordinarily it would be uneconomical as well as vexatious for a federal court to
> proceed in a declaratory judgment suit where another suit is pending in a state
> court presenting the same issues, not governed by federal law, between the same
> parties." 316 U.S. at 495, 62 S.Ct. at 1176. *Accord, Telesco,* 765 F.2d at 363. If
> there is any case that is vexatious, reactive, and duplicative of state proceedings, it
> is this case. In addition, the motivation of the plaintiff to bring this totally
> duplicative federal diversity action is highly suspect as, in this Court's view, the
> federal court is being used as a means of further retaliation against these
> defendants, and as a tool for harassment. Accordingly, the Court finds that there
> are exceptional circumstances that warrant the Court's dismissal of the case under
> the *Colorado River* abstention doctrine. The Court therefore, declines to exercise
> jurisdiction in this case, and the case is dismissed without prejudice.

(emphasis added).

In *Weinstock v. Cleary, Gottlieb, Steen & Hamilton,* 815 F.Supp. 127, 132 (S.D.N.Y.

1993), the court granted dismissal under *Colorado River,* stating:

> Simply, Weinstock instituted the instant action years after the underlying factual disputes were already the subject of litigation in the New York courts. Even granting that Weinstock did not actively seek to protect his alleged interests until 1988 because of illness, this suit comes almost five years late. Moreover, by asserting here claims nearly identical to those asserted in the state forums after having received several adverse rulings there, Weinstock appears to have instituted this action as much for tactical reasons as for a genuine interest in obtaining relief. *See Moses H Cone,* 103 S.Ct. at 937 n. 20 ("the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation").

(emphasis added).

In *Garcia v. Tamir,* 1999 WL 587902 at 8 (S.D.N.Y. August 4, 1999), the court granted

dismissal under *Colorado River,* stating:

> The Supreme Court has found "considerable merit" in an additional factor, stating that "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River."* Cone, 460 U.S. at 17 n. 20, 103 S.Ct. at 937 n. 20. In this case, there is a hostile history derived from plaintiffs' attempt to keep Tamir and Abrahim in the state law suit. As is clear from the procedural history set out above, the present action in federal court was filed in reaction to the state court's dismissal of Tamir and Abrahim from the state court action. While this alone might not even be sufficient to tip the *Colorado River* balance, plaintiffs' obvious "Chinese Menu" strategy is sufficient.

> When combined with the normal *Colorado River* factors, particularly the danger of piecemeal litigation, consideration of the vexatious and reactive nature of this action is more than sufficient to constitute the exceptional circumstances which tip the balance away from this court's exercise of jurisdiction in this matter.

(emphasis added).

Similar to *Telesco, Bernstein, Weinstock* and *Garcia,* one need simply to examine the

timing of Plaintiffs' Federal Action to see that it is purely vexatious, reactive, tactical and

initiated for the improper purposes of harassment, delay and needlessly increasing Defendants'

litigation costs. Instead of litigating issues in Queens County and complying with a State Court

Order entered on February 28, 2020 (Exhibit F), Plaintiffs ignored the State Court Order and

14

filed this instant Federal Action, which encompassed the same factual allegations and same requested relief as the pending Queens Action. One of plaintiffs' objectives in filing the within Federal action was to avoid complying with the discovery Order entered February 28, 2020 and to extend the DMCA injunction under 17 USC sec. 512(g)(2)(c ) that is legally effective until the state action is resolved.

This Federal Court ordered Plaintiffs on March 29, 2021 to Show Cause "why the case should not be dismissed for lack of prosecution, pursuant to Fed. R. Civ. P. 41(b), and for failure to effect timely service on defendants, pursuant to Fed. R. Civ. P. 4(m)." See Order ¶ 2 (Dkt. No. 9). Plaintiffs, in their submission on April 2, 2021, omitted material facts that a parallel State Action was pending in Queens County. See Plaintiffs Motion 1-2. (Dkt. 10)  Plaintiffs went as far in their submission to misrepresent material facts and mislead this Federal Court to try to win a default judgment without notifying Defendants.

In this Federal Court's most recent Order denying Plaintiffs' motion for leave to effect alternate service, Magistrate Judge Roanne L. Mann acknowledged "[c]ounsel for defendants in a parallel state court action have filed a response to plaintiffs' motion, apprising the Court of material facts omitted from plaintiffs' submission[,]" (Dkt # 14) Order at 1, and "defense counsel in the state action have been in contact with plaintiffs' counsel since December, 2020, but plaintiffs' counsel never informed them of the pendency of this federal action, and never requested that defense counsel accept service on defendants' behalf or that defendants waive service". Id at 2-3. The Court further acknowledged that "Plaintiffs' claim that they "hav[e] no leads or information with which they can pursue [d]efendants in New York[,]" Pl. Motion at 2, strains credulity given the fact that the Parties to this action have been in engaged in parallel state court litigation since 2019." Id. at 4.

15

In fact, in-house counsel represents Plaintiffs in the pending State Action, was in contact with the undersigned only five days after Plaintiffs' filed their Motion in the Federal Action. Defendants' notified Plaintiffs' counsel of their non-compliance with the February, 2020 State Court Order in a letter dated April 7, 2021. See Exhibit H ¶ 4. Plaintiffs' in-house counsel responded to the letter requesting an additional month to comply with the State Court Order, which Plaintiffs ultimately did not do. Plaintiffs, in their contact with Defendants, did not mention the Federal Action or their Motion.

Plaintiffs' actions demonstrate a clear pattern of vexatious and reactive litigation. There is also a considerable benefit to Plaintiffs in their dilatory moves in not complying with a State Court Order for over 18 months following considerable discovery and motion practice, filing this Federal Action and then not pursuing the Federal Action for over 4 months. The State Action and the instant Federal Action encompass the same set of facts and requested relief. The State and Federal Complaints both claim, "Plaintiffs are entitled to injunctive relief, to an accounting of Defendants' profits, to damages, and to costs." Compare Exhibit A ¶ 55-58 with (Dkt. #1) Complaint ¶ 35-38. Plaintiffs are in possession of an accounting of Defendants' sales and profits (which are $0.00). Plaintiffs subpoenaed non-party Shopify Inc. in the State Action requesting Defendants' website "transaction history" (Exhibit D at 1-2) and obtained the certified business records from Shopify Inc. on December 16, 2019. See id. at 8. Furthermore, Plaintiffs have already benefited from injunctive relief since November 11, 2019 by the pending State Court Action and Plaintiffs' second DMCA Takedown Notice under 17 U.S.C. § 512(g)(2)(c). See Exhibit E at 5, 8.

17 U.S.C. § 512(g)(2)(c) states:

"[The service provider is protected from liability if it ]replaces the removed material and ceases disabling access to it not less than 10 nor more than 14, business days following receipt of the counter notice, unless its designated agent first receives notice from the person who submitted the notification under subsection (c)(1)(C) <u>that such person has filed an action seeking a court order to restrain</u> the subscriber from engaging in infringing activity relating to the material on the service provider's system or network."

(emphasis added).

This statute provides for a website host to shut down a defendant's website while an action like this is pending without an interim court order.

As of this day, Defendants do not have the ability to display 37 product pages of gold chains and bracelets on their website that Plaintiffs' complained in their DMCA Takedown Notice until the State Action is resolved pursuant to 17 U.S.C. § 512(g)(2)(c). The State Court did not order an injunction on defendants' website as Plaintiffs acted on their sole discretion and rights under the DMCA statute. After over two years of litigation and delays by Plaintiffs in Queens County, Defendants are unable to open or operate their website business until the DMCA Takedown Notice filed by Plaintiffs is resolved in the State Action. Plaintiffs being ordered by the State Court to produce discovery in support of their pleadings (Exhibit F) have ignored the State Court Order and reacted by filing this instant Federal action to re-litigate the same facts in a new forum. Defendants spent legal fees in defending the state court action and now have to bear additional legal costs in filing this motion to dismiss the instant Federal Action.

In addition to the weight of the *Colorado River* factors set forth above, the vexatious and reactive nature of the Federal Action warrants dismissal of the Federal Action.

## CONCLUSION

17

For the foregoing reasons, and in the interest of judicial economy, as well as ensuring consistent determination of key issues regarding the asserted claims, the Defendants submit that this Court should grant this motion to dismiss or in the alternative, to stay the action under the "Colorado River" doctrine and award Defendants the costs and reasonable attorney's fees incurred in defense of this action, along with all other relief to which Defendants are justly entitled.

Dated: July 16, 2021
New York, NY

/s/ *Craig K. Tyson*

Craig K. Tyson
The Law Office of Craig K. Tyson
299 Broadway, Suite 800
New York, New York 10007
Phone: (917) 815-8530
Fax: (212) 661-5844
ctfstop@aol.com

**Attorneys for Defendants**
**Toggle Web Media LLC d/b/a Icy**
**AF Jewelry and Moshe Priyev**

18

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served electronically on all counsel of record via the Court's ECF system on July 16, 2021.


Dated: July 16, 2021
New York, NY

/s/ Craig K. Tyson
Craig K. Tyson