UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
 ------------------------------------x

   ID TECH LLC d/b/a FROST NYC,

                       Plaintiff,              **MEMORANDUM & ORDER**
                                               20-CV-5949(EK)(RER)

                    -against-

   TOGGLE WEB MEDIA LLC d/b/a ICY AF
   JEWELRY and MOSHE PRIYEV,

                       Defendants.

 ------------------------------------x

ERIC KOMITEE, United States District Judge:

          Plaintiff ID Tech LLC is an online retailer.  It sells

jewelry under the name "Frost NYC" at www.frostnyc.com.

Plaintiff filed this action against defendants Toggle Web Media

LLC and Moshe Priyev, who operate a competing, and allegedly

similar, website.  ID Tech alleges that Toggle Web's site

infringes Plaintiff's copyrights, in violation of 17 U.S.C.

§ 501.  Defendants have moved to dismiss Plaintiff's complaint

for failure to state a claim.

          The problem with Plaintiff's Amended Complaint is the

pronounced mismatch between the copying that Plaintiff alleges,

on the one hand, and the nature of its copyrights, on the other.

As discussed in detail below, the Amended Complaint alleges

infringement of Plaintiff's *website* — the combination and

arrangement of text and photographs contained therein.  But ID

Tech has alleged that it owns two copyright registrations,

neither of which protects such a compilation; instead, they protect the photographs and text contained on the website.

ID Tech is likely to face an insurmountable hurdle in this case regardless of whether it is pursuing a claim of infringement for the underlying photos and text *or* for the compilation thereof.  The problems with the former type of claim include, among other issues, that the photos and text on Toggle Web's site are not, at least insofar as is apparent from the attachments to ID Tech's complaint, identical to the photos and text on ID Tech's site; and to the extent ID Tech is complaining of substantial similarity, rather than outright copying, its photos and text are insufficiently original to merit actionable protection.

If, on the other hand, ID Tech were to pursue its current claim — that the defendants infringed its website — it may run headlong into the potential problems that (a) it does not hold a copyright registration protecting the website itself, and (b) it is unclear that such material may be copyrighted at all.  Thus, even if the Court grants leave to amend the complaint yet again, such amendment is likely to be futile.

Nevertheless, in an abundance of caution, I dismiss ID Tech's amended complaint without prejudice, to afford it one more opportunity to plead a viable theory of infringement.

## I.   Background

The following recitation is taken from the Amended Complaint.  ID Tech and Toggle are both "custom" jewelry retailers.  *Id.* ¶¶ 2, 17.[1]  Priyev is Toggle's managing member. *Id.* ¶ 11.  ID Tech filed this suit in December 2020 (along with another plaintiff who later withdrew voluntarily).  It initially alleged copyright infringement and unfair competition.  Compl. ¶¶ 30-49, ECF No. 1.[2]  After a pre-motion conference, Plaintiff filed an Amended Complaint (hereinafter the "Complaint"), which maintained only the copyright claim.  Am. Compl. ¶¶ 27-34, ECF No. 26.

### A.   Plaintiff's Description of the Allegedly Infringed Intellectual Property

ID Tech claims that the defendants' website infringed ID Tech's copyrighted intellectual property.  *Id.* ¶ 1.  The Complaint clearly describes the infringed intellectual property as consisting of the Plaintiff's website – the amalgam of text and photos through which ID Tech sells jewelry online.  The Complaint defines the "Copyrighted Work" up front, for example,

---

[1] Plaintiff mis-numbered Paragraph 17 of the Amended Complaint as a second Paragraph 15.

[2] Defendants argued that the other plaintiff, an individual, lacked standing to pursue the copyright claim because the copyright registration shows only ID Tech as the owner.  *See* Mem. of Law in Supp. of Defs.' Mot. to Dismiss 20, ECF No. 29.  At oral argument, Plaintiffs' counsel requested to dismiss the individual plaintiff's claim, and I granted that motion.  *See* Minute Entry, ECF No. 35.

by reference to the URL for Plaintiff's website.  *See id.* ¶ 1

(seeking injunctive and monetary relief for the "infringement of

Plaintiffs' copyright in Plaintiffs' website www.frostnyc.com

(the 'Copyrighted Work')")."  Later, the Complaint alleges that

"Plaintiffs authored the Copyrighted Work when it [sic] created

and curated its website to offer its merchandise for sale.  As a

result, Plaintiffs own any and all copyright rights in the

Copyrighted Work."  *Id.* ¶ 12; *see also id.* ¶ 16 ("The

Copyrighted Work is of significant value to Plaintiffs because

it [sic] has invested substantial resources in designing a

distinctive and comprehensive website and the Copyrighted Work

to guarantee its website will be unique in the industry."); *id.*

¶ 28 ("The Copyrighted Work *is an original composition* of

pictures and text containing copyrightable subject

matter . . . .") (emphasis added).

**B.   Plaintiff's Copyright Registrations**

Plaintiff alleges that it holds two copyright

registrations, Nos. TX-8-656-864 and VA0002192563, issued by the

United States Copyright Office.  *Id.* ¶ 14.  The Complaint

attaches a copy of the registration certificate for the -864

registration.  *See id.;* Registration Certificate, ECF No. 26,

Ex. B.  That certificate identifies the "Title of Work" being

protected as the "Frost NYC Product Catalog (Electronic

Version)."  *Id.*  Despite that title, the certificate indicates

that the "Authorship" material being registered consisted of the "text" and "photograph(s)" of the website. *Id.* As explained in the Discussion below, the authorship section would control in the case of any disparity between that section and the Title of Work.

ID Tech did not attach the -563 certificate to its Complaint, but the contents of that certificate are available through the Copyright Office's database and are subject to judicial notice. *See Blue Book Servs., Inc. v. Farm J., Inc.*, 435 F. Supp. 3d 912, 916 (N.D. Ill. 2020). That record shows that the -563 registration likewise applied to ID Tech's authorship of "photographs" and "Text."

## C.   The Nature of the Alleged Infringement

ID Tech alleges that "[o]n information and belief, Defendants viewed Plaintiffs' [website] and intentionally copied" it to create their own website. Am. Compl. ¶ 19. It avers that by "publish[ing] and publicly display[ing] a substantially similar version of the Copyrighted Work" on their own website, Defendants infringed ID Tech's copyrights. *Id.* ¶¶ 15–18.

ID Tech also attached "[a] true and correct photograph" of a page from its website to the Complaint. *Id.* ¶ 12, Photograph of Pls.' Website, ECF No. 26, Ex. A. That photo is set out in the Appendix of this opinion; it shows a

product billed as a "Mens [sic] Gold Chain — Solid Cuban Link 10K Gold."  Plaintiff also attached "a photograph depicting Defendants' unlawful publication, reproduction, and public display of" its copyrighted work — what Plaintiff describes as Defendants' "competing website."  Compl. ¶ 18; *see also* Photograph of Defs.' Website, ECF No. 26, Ex. C.  Plaintiff's Exhibit C is also reproduced in the Appendix.  It shows a product that the defendants billed as a "14K Yellow Gold Men's Solid Miami Cuban Link Chain."

Notably, the photographs in Plaintiff's Exhibits A and C are not the same; and neither is the text used to describe the products, as is apparent from the product names quoted above. The photos are taken from different angles: On Plaintiff's Frost NYC site, the gold chain is photographed at what appears to be an angle of approximately forty-five degrees.  This shows the product in perspective, at least partially, such that the bottom of the chain appears closer to the camera, and the top is marginally smaller and farther away.  On Defendants' ICY website, in contrast, the gold chain appears to have been photographed head-on.  The arrangement of the links is different in the two photos as well; on Plaintiffs' site, the two sides of the chain get closer together towards the top of the image, whereas they are farther apart in the top of the photo on the Defendants' site.  The gold chains themselves are different in

both photos, as is apparent from a close look at the links.  The
only apparent similarities between the two images are the
subjects — both contain gold chains — and the white backgrounds
in each.

There are similarities in the "look and feel" of the
two websites.  Plaintiff has not, however, even attempted to
describe those similarities with specificity.  Instead, it
refers generically to "similarities . . . in overall
appearance":

> As can be seen from viewing and comparing Exhibits "A" and
> "C" the design of the Infringing Work is substantially
> similar to the Copyrighted Work.  Given these similarities,
> the Infringing Product is substantially similar to and
> virtually indistinguishable from Plaintiffs' [sic]
> Copyrighted Work in overall appearance.

Am. Compl. ¶ 21; *see also id.* ¶ 19 (referring to the "striking
and substantial similarities" between the two websites, without
further explanation).  In essence, Plaintiff leaves it to the
Court to identify the nature of any specific similarities.

At oral argument, when asked to articulate the
similarities between Exhibits A and C, ID Tech identified only
the third small photo from the top in Exhibit A (ID Tech's
website), which it argued is the same as the large photograph
shown in Exhibit C (showing Defendants' website).  Tr. of Oral
Arg. 29:21–31:3, ECF No. 40.  That photo in Exhibit A is too
small, however, to permit a close comparison to the larger

photograph in Defendants' Exhibit C.  Counsel for ID Tech represented that Defendants have since taken down their website and that Plaintiff has thus been unable to gather more instances of similarity.  *Id.* at 31:4–9.

Defendants filed this motion to dismiss for failure to state a claim.  Mot. to Dismiss, ECF No. 27.

## II.  Legal Standards

On a motion to dismiss under Rule 12(b)(6), "the court's task is to assess the legal feasibility of the complaint."  *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).[3]  In doing so, the Court "must take the facts alleged in the complaint as true, drawing all reasonable inferences in [the plaintiff's] favor."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

---

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

### III.  Discussion

The issue here is whether ID Tech has satisfied a key prerequisite to a copyright infringement claim: obtaining a registration for the same intellectual property that it believes the defendant has infringed.  The existing Complaint does not satisfy this requirement.  Although the Complaint alleges that Defendants infringed ID Tech's "website" as a whole, including its "design elements," the Complaint also alleges that ID Tech has obtained registrations only for the "photographs" and "text" of the website.  This mismatch between the allegations and the actual registrations requires dismissal.

### A.   Registration Is a Prerequisite to a Plausible Copyright Infringement Claim

"To establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996).  To meet the second requirement, a plaintiff "must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999).  "Actual copying may be shown by direct or indirect evidence; indirect evidence of

copying includes proof that the defendants had access to the copyrighted work and similarities that are probative of copying between the works." *Id.*

"The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010). "In applying the so-called 'ordinary observer test,'" courts ask "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Id.* In cases alleging infringement of photographic works, courts look to the following elements for indications of similarity: in "timing," in the "creation of the subject," and in the "rendition." *Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 452–54 (S.D.N.Y. 2005).

A copyright infringement action cannot proceed without the plaintiff having obtained a copyright registration. Section 411(a) of the Copyright Act mandates that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with [the Act]" (with exceptions not relevant here). 17 U.S.C. § 411(a). This provision functions as "an administrative exhaustion requirement

that the owner must satisfy before suing to enforce ownership rights." *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019).  Said differently, "without a valid copyright registration, a plaintiff cannot bring a viable copyright infringement action." *Sohm v. Scholastic Inc.*, 959 F.3d 39, 53 (2d Cir. 2020).

Taking into account the registration requirement, district courts in this Circuit have set forth four elements that a plaintiff's complaint must allege "to withstand a motion to dismiss a copyright infringement claim": "(1) which original works are the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts during what time the defendant infringed the copyright." *Exceller Software Corp. v. Pearson Educ., Inc.*, No. 10-CV-0381, 2010 WL 4486944, at *5 (S.D.N.Y. Nov. 9, 2010). The first and fourth elements are the primary focus here — specifically, whether the alleged infringement was *of* the copyrighted material.

As a result, to determine whether a copyright infringement claim survives a motion to dismiss, the Court must analyze the scope of the registrations identified in the complaint.  "Understanding the scope of the registrations starts, unsurprisingly, with the registrations

themselves." *Blue Book Servs., Inc.*, 435 F. Supp. 3d at 917.  I therefore next examine what ID Tech's copyright registrations say about the scope of those registrations.

**B.   ID Tech's Copyright Registrations Extend Only to the Photographs and Text On Its Website**

The titles of Plaintiff's registrations — "Frost NYC Product Catalog (Electronic Version)" and "Frost NYC Website" — suggest that Plaintiff may have sought to register the compilation or website.  However, the title is not the part of a registration certificate that controls.  Instead, the key portion is the "authorship" field, and the authorship fields here speak only to photographs and text.

"[I]n general, the nature of authorship defines the scope of the registration . . . ."  *Ward v. Barnes & Noble, Inc.*, 93 F. Supp. 3d 193, 204 (S.D.N.Y. 2015).  As the Copyright Office explained in its *Compendium of U.S. Copyright Office Practices*, "[a]s a general rule, a claim to copyright is defined by the information provided in the Author Created field (in the case of an online application) or in the Nature of Authorship space (in the case of a paper application)."  *Compendium* § 618.3.  That information "will appear" in the "Author Created" field in a certificate of registration and the "Authorship"

field of the Copyright Office's online public record of that registration.  *Id.* § 618.1.[4]

In line with this guidance, courts have routinely considered a copyright registration's "authorship" information to be authoritative in identifying whether the allegedly infringed material is covered by the registration.  In *Ward*, for example, the plaintiff held a copyright registration that listed, in the "authorship" section, only "'text' or 'entire text' as the extent of Plaintiff's authorship of the . . . books in question."  *Ward*, 93 F. Supp. 3d at 204.  The court therefore held that the registration did not extend to the books' "interior game boards and artwork."  *Id.*  Likewise, where certificates of registration listed "compilation of database material" in the "Author Created" field, a court found that they extended only to the compilation, not the text contained in the database.  *Blue Book Servs.*, 435 F. Supp. 3d at 917, 919; *see also* Certificates of Registration, *Blue Book Servs.*, No. 18-CV-

---

[4] The Supreme Court has held that the Compendium is entered to some (perhaps modest) deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  *See Georgia v. Public.Resource.Org, Inc.*, 140 S. Ct. 1498, 1510 (2020).  The *Compendium* is also frequently relied upon by courts including the Second Circuit.  *See, e.g.*, *TCA Television Corp. v. McCollum*, 839 F.3d 168, 189 (2d Cir. 2016) (citing the *Compendium* for the definition of a "license"); *Horgan v. Macmillan, Inc.*, 789 F.2d 157, 161 (2d Cir. 1986) (relying on the *Compendium*'s explanation of the principles governing copyright of choreographic works).

7155 (N.D. Ill. Jan. 27, 2020), ECF Nos. 1-6, 1-7.[5]  Other cases
have also found the "authorship" field to be the key indicator
of the scope of the registration.  *See Axelrod & Cherveny
Architects, P.C. v. Winmar Homes*, No. 05-CV-711, 2007 WL 708798,
at *5 (E.D.N.Y. Mar. 6, 2007) ("[W]hen there is a perceived
disparity between the listing in the 'nature of the work' and
'nature of authorship' sections of Forms VA or PA, the latter
should be treated as controlling."); *Design Basics, LLC v.
Forrester Wehrle Homes, Inc.*, No. 3:15-CV-0666, 2018 WL 1583103,
at *13 n.10 (N.D. Ohio Mar. 30, 2018) ("To identify the
copyrighted work as either a [pictorial, graphic, and sculptural
work] or architectural work, I consult the 'nature of
authorship' section of the certificates of registration.").

        Here, the -864 registration lists ID Tech's authorship
as simply "text, photograph(s)."  The -563 registration
similarly lists ID Tech's authorship as "photograph, Text."
Thus, the scope of the registrations extends only to the text
and photographs of Plaintiff's website.  Consistent with that
conclusion, the *Compendium* — in a chapter dedicated to
websites — specifies that "text" and "photographs" are different

---

[5] This result does not conflict with *Sohm* because, although the court
did not explicitly state this, the registration certificates in that case
included both "compilation" and "photos" (or "artwork") in their authorship
fields.  *See* U.S. Copyright Nos. VA0001132628, VA0000863783, VA0000863785.
At issue in *Sohm* was whether the "photos" / "artwork" part of that
registration was valid.  *Sohm*, 959 F.3d at 53.

forms of authorship than the "compilation of [e.g., text and artwork]" or "selection, and arrangement of [e.g., text and photographs]." *Compendium* § 1009.6(A).  The next question, then, is whether ID Tech has adequately pleaded infringement of its text or photographs.

**C.    The Complaint Does Not Plead Infringement of Any Text or Photos on ID Tech's Website With Sufficient Specificity**

        A plaintiff's failure to identify the *specific* work that was copied renders its complaint subject to dismissal.  The Second Circuit has held that a district court properly dismissed a copyright infringement claim at the motion-to-dismiss stage where the complaint "failed to allege that a substantial similarity exists between defendants' work and the protectible elements of plaintiffs'." *Peter F. Gaito Architecture*, 602 F.3d at 69.  The failure to "plead facts . . . identifying the protectable elements of the works as part of [plaintiff's] claim[] will result in the dismissal of the copyright claim" because it amounts to a "failure to plead facts regarding how the works are substantially similar." *Perry v. Mary Ann Liebert, Inc.*, No. 17-CV-5600, 2018 WL 2561029, at *5 (S.D.N.Y. June 4, 2018), *aff'd,* 765 F. App'x 470 (2d Cir. 2019); *accord Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 442 (S.D.N.Y. 2012).

Here, ID Tech's Complaint does not allege that any photograph or any text was copied, let alone specify which photographs or text were allegedly copied.  Rather, on its face, the Complaint alleges only that Defendants copied its "website." Am. Compl. ¶¶ 1, 21.  Thus, ID Tech cannot overcome dismissal on the basis that it has adequately pleaded infringement of any photographs or text.

Even if ID Tech did plead infringement of its photographs, such a claim likely would fail.  "The *sine qua non* of copyright is originality."  *Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).  That requires the work to possess "at least some minimal degree of creativity."  *Id.*  As noted above, a neighboring district court has explained that "[a] photograph may be original in three respects": in timing, "in the creation of the subject," and "in the rendition." *Mannion*, 377 F. Supp. 2d at 452–54.  Most salient here is originality in the rendition — that is, in the manner in which a photograph depicts its subject (such as by angle of shot, light and shade, exposures, or filter effects).  *Id.* at 452.  As noted above, ID Tech's photographs exhibit little originality in their rendition.

Nor are ID Tech's photographs original in timing, *i.e.*, "being at the right place at the right time."  *Mannion*, 377 F. Supp. 2d at 452–53.  There is nothing special about the

timing of a photograph depicting jewelry that is lying still. And finally, a photograph "may be original to the extent that the photographer created the scene or subject to be photographed." *Id.* at 453.  But there is also nothing special about the "scene" here — a relatively common product set against a plain, white background.

These principles were dispositive in *Oriental Art Printing, Inc. v. Goldstar Printing Corp.*, 175 F. Supp. 2d 542 (S.D.N.Y. 2001).[6]  In that case, the court held that generic photographs of common Chinese-takeout dishes, used for restaurant menus, were not sufficiently original to be protected by copyright.  *Id.* at 546.  As the Court reasoned:

> The photographs lack any artistic quality, and neither the nature and content of such photographs, nor plaintiffs' description of their preparation, give the Court any reason to believe that any "creative spark" was required to produce them.  The photographs . . . are direct depictions of the most common Chinese food dishes as they appear on the plates served to customers at restaurants.

*Id.*

For these reasons, even if ID Tech had adequately pleaded infringement of its photographs, such a claim would be unlikely to succeed.  Nevertheless, in an abundance of caution, I dismiss ID Tech's complaint without prejudice.

---

[6] *Aff'd in part, appeal dismissed in part sub nom. Oriental Art Printing Inc. v. GS Printing Corp.*, 34 F. App'x 401 (2d Cir. 2002).

D.     **The Complaint Does Not State a Plausible Claim for
Infringement of ID Tech's Website or Its Design Elements
Because They Are Outside the Scope of the Copyright
Registrations**

Rather than alleging that any specific photographs or
text were copied, ID Tech alleges that Defendants infringed its
"website" as a whole, or alternatively, its "design."  But as
the *Compendium* explains, "[a] website in and of itself is not
explicitly recognized as copyrightable subject matter."
*Compendium* § 1006.  Rather, "[a] website is merely a medium of
fixation for works of original authorship," or said differently,
"a vehicle for the dissemination of content" that "is not a work
of authorship in and of itself."  *Id.*  In other words, trying to
copyright a website makes as much sense as trying to copyright
the paper on which a book is written.  And in any event, as
noted above, ID Tech's copyright registrations do not extend its
authorship to its entire website.

ID Tech perhaps could have alleged that Defendants
infringed other elements of its website, such as the non-
functional design elements, which some courts have referred to
as a website's "look and feel."  *See, e.g.*, *Conference Archives,
Inc. v. Sound Images, Inc.*, No. 3:2006-76, 2010 WL 1626072, at
*4 (W.D. Pa. Mar. 31, 2010).  At oral argument, Plaintiff
attempted to subscribe to this allegation after the Court raised
the question.  Tr. of Oral Arg. 26:17-19.  ID Tech's Complaint

also gestures at this direction, alleging that the "design" of Defendants' website is substantially similar to that of ID Tech's website and that the two websites are "virtually indistinguishable . . . in overall appearance." Am. Compl. ¶ 21.

Although some case law supports the notion that the look and feel of a website can be copyrightable, the courts that have addressed the issue largely have held to the contrary.[7] Moreover, the *Compendium* (which, as mentioned, is entitled to *Skidmore* deference) also concludes that look and feel is not copyrightable. See *Compendium* § 1007 ("Examples of uncopyrightable material include, but are not limited to, . . . [t]he layout, format, or 'look and feel' of a website.").

But the Court need not answer that question today. As discussed, to maintain a copyright infringement suit based on its website's non-functional design elements, ID Tech must show

_____

[7] *Compare BMaddox Enterprises LLC v. Milad Oskouie, Osko M Ltd.*, No. 17-CV-1889, 2021 WL 3675072, at *9 (S.D.N.Y. Aug. 18, 2021) ("look and feel" of a website is copyrightable), *with, e.g.*, *Conf. Archives, Inc. v. Sound Images, Inc.*, No. CIV. 3:2006-76, 2010 WL 1626072, at *13 (W.D. Pa. Mar. 31, 2010) ("[T]he 'look and feel' [of a website] is not copyrightable"), *withdrawn in part on other grounds on reconsideration,* 2010 WL 11569824 (W.D. Pa. July 28, 2010); *Darden v. Peters*, 402 F. Supp. 2d 638, 644 (E.D.N.C. 2005) ("[P]rotection for the overall format of a web page is inconsistent with copyrightability."), *aff'd,* 488 F.3d 277 (4th Cir. 2007); *Crown Awards, Inc. v. Trophy Depot*, No. 03-CV-02448, 2003 WL 22208409, at *13 (E.D.N.Y. Sept. 3, 2003) ("The mere use of a three frame design, the use of a small picture of the catalogue on the upper right side and the use of promotional language stating 'SAME DAY SHIPPING - In Stock For Immediate Delivery' are insufficient to create an 'original' compilation of elements that forms the basis for copyright protection.").

that it has a valid copyright registration extending to those elements.  But ID Tech has not alleged that — at all, let alone plausibly.  At oral argument, Plaintiff's counsel pointed to the "Title of Work" section of the -864 registration certificate, which reads "Frost NYC Product Catalog (Electronic Version)." Tr. of Oral Arg. 25:24–26:1.  But as discussed, the "authorship" field controls here.  *See supra* section III.B.  Given that that field includes only "photographs" and "text," ID Tech has not pleaded registration over the website's non-functional design elements.[8]

## IV.  Conclusion

For these reasons, Defendants' motion to dismiss is granted.  The Amended Complaint is dismissed without prejudice for failure to state a claim to relief.  Any further amended complaint must be filed within thirty days from the date this

---

[8] Because Plaintiff's sole claim must be dismissed for failure to state a claim, this Court need not and does not reach Defendants' arguments about whether Priyev is a proper party to this action, whether Plaintiff is entitled to statutory damages and attorneys' fees, and whether *Colorado River* abstention should apply.

Order is filed; otherwise, the claims will be dismissed with

prejudice.

       SO ORDERED.


                              /s/ Eric Komitee
                        ERIC KOMITEE
                        United States District Judge


Dated:     March 23, 2023
            Brooklyn, New York

**Plaintiff's Exhibit A**



Plaintiff's Exhibit C

